# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STEPHEN M. HAUT,                          )
                                          )
      Plaintiff,                          )
                                          )
                                          )    Civ. 15-511
                                          )
CAROLYN W. COLVIN,                        )
Acting Commissioner of Social             )
Security,                                 )
                                          )
      Defendant.                          )

## OPINION

### I. Introduction

This case is before us on appeal from a final decision by the defendant, Commissioner of

Social Security ("the Commissioner"), denying the claim of Plaintiff Stephen M. Haut ("Haut")

for disability insurance benefits and supplemental security income under Title II and Title XVI

of the Social Security Act. Haut filed his Complaint in this court seeking judicial review

pursuant to 42 U.S.C. § 405(g), [ECF No. 3], and the parties have submitted cross-motions for

summary judgment with briefs in support.[1] [ECF Nos. 12, 13, 18, 19]. The Commissioner's

motion seeks affirmance of the final decision denying benefits and Haut's motion seeks remand.

[ECF Nos. 13 at 11; 19 at 2]. For the reasons stated below, we will grant Haut's motion, deny

the Commissioner's motion, and remand for further proceedings consistent with this opinion.

### II. Procedural History

This matter is on review from the September 17, 2013 decision of Administrative Law

Judge Joanna Papazekos ("ALJ Papazekos"), R. at 12-25, denying Haut's application for benefits

---

[1] As observed by Oberley v. Colvin, 2014 WL 2457398 at *1 n.1 (W.D.Pa. May 30, 2014), although Federal Rule of
Civil Procedure 56 does not govern the District Court's judicial review of the Commissioner's decision under the
act, cross-motions for summary judgment are employed by the parties to provide a method for consideration of their
respective positions.

after hearing and on remand from the Appeals Council on a prior appeal to the Appeals Counsel from the February 9, 2012 decision of Administrative Law Judge Daniel Cusick ("ALJ Cusick") also denying benefits. R.126-145. Haut applied for Disability Insurance Benefits and Supplemental Security Income under Title II and Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 1381-1383f on January 22, 2010, alleging disability as of October 30, 2009 at the age of 37 years old, R. at 36, placing him in the age category of younger individual (18-49). 20 C.F.R. §§ 404.1563(c), 416.963(c).

Haut's claim was initially denied on June 8, 2010, and was denied on reconsideration on August 3, 2010. Haut made a timely written request for hearing. ALJ Cusick held a hearing on January 9, 2012, R. at 81, at which Haut appeared and testified as did independent vocational expert James Ganoe. R. at 81, 115. Haut was represented at that hearing by counsel. R. at 27. By decision dated February 9, 2012, R. at 126, ALJ Cusick determined that Haut was not disabled under §§ 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. R. at 129. ALJ Cusick found that Haut had severe impairments of asthma, obstructive sleep apnea (OSA), obesity, headaches, gastroesophageal reflux disease (GERD), and irritable bowel syndrome (IBS) and non-severe impairments of hypertension, hyperlipidemia, depression, mood disorder, and obsessive-compulsive disorder (OCD). R. at 131, 132. On review, the Appeals Council vacated ALJ Cusick's determination and remanded with instructions for the ALJ to, inter alia: 1) obtain additional evidence concerning Haut's impairments; if necessary, obtain medical expert evidence to clarify the nature and severity of Haut's impairments and their impact on his ability to perform work; further evaluate Haut's mental impairments; further consider Haut's maximum residual functional capacity ("RFC") during the entire period at issue and explain the weight

2

given to medical opinion evidence regarding same; evaluate third party statements; and obtain evidence from the vocational expert clarifying the effect of Haut's assessed limitations on his occupational base. R. at 148-149.

On remand from the Appeals Council, the matter was assigned to ALJ Papazekos, who held a hearing on August 7, 2013, R. at 12, 32, at which Haut appeared and testified as did independent vocational expert Mary Beth Kopar. R. at 12. Haut was represented by counsel. R. at 12. By decision dated September 17, 2013, ALJ Papazekos determined that Haut was not disabled under §§ 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act through September 17, 2013. R. at 12, 25. ALJ Papazekos found that Haut had the following severe impairments: obsessive compulsive disorder (OCD), mild depression, anxiety and obesity, as they cause more than minimal limitation in Haut's ability to perform basic work functions. R. at 15. ALJ Papazekos further found that Haut had the following non-severe impairments: asthma, sleep apnea, lipomas (fatty tumors), gastroesophageal reflux disease (GERD) and irritable bowel syndrome (IBS). R. at 15. ALJ Papazekos also found that Haut had only mild limitations in his activities of daily living, R. at 16, moderate difficulties in his social functioning, R. at 16, and moderate difficulty with concentration, persistence and pace. R. at 17.

ALJ Papazekos determined that none of Haut's physical impairments or combination of impairments meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 CFR § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. R. at 15. She concluded that neither the paragraph B nor the paragraph C criteria, which are related to whether his mental impairments met or equaled the criteria of Listings 12.04 and 12.06, were met in this case. R. at 16.

3

As to Haut's RFC, the ALJ determined that Haut has the RFC to perform light work, except that he is limited to occasional balancing, stooping, kneeling, crouching and crawling; cannot climb ropes, scaffolds or ladders or use foot pedals bilaterally as part of his job; cannot be exposed to hazards, extremes of cold, heat, wetness, humidity and pulmonary irritants such as gases, fumes, dusts, and odors; is limited to occasional contact with the public and co-workers, working primarily with things and not people, performing verbal instructions with little to no reading necessary to complete the job, decision-making using concrete variables within standardized situations; and must work in a stable environment where the work place and work processes remain generally the same from day to day. R. at 17-18.

"'[L]ight work generally requires the ability to stand and carry weight for approximately six hours of an eight hour day.'" Fargnoli v. Massanari, 247 F.3d at 40 (quoting Jesurum v. Sec. of Health & Human Servs., 48 F.3d 114, 119 (3d Cir. 1995)(citing Social Security Ruling 83-10)). The SSA specifically defines light work as follows:

> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

In her ruling, ALJ Papazekos indicated she made the following credibility determination:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

4

R. at 19. ALJ Papazekos stated that based on the medical evidence and opinions and Haut's activities, Haut's "subjective complaints and alleged limitations are not fully persuasive and that he retains the capacity to perform work activities within the limitations" as found. R. at 23.

Regarding his ultimate ruling that Haut is not disabled, ALJ Papazekos stated:

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate. . . .

R. at 24.

Haut timely filed for review of the ALJ's determination that he was not disabled under the Act, which review was denied by the Appeals Council on February 13, 2015. R. at 1. Thus, the ALJ's decision became the Commissioner's final decision for purposes of our review. Having exhausted his administrative remedies, Haut filed the instant action seeking judicial review of the final decision of the Commissioner of Social Security denying his application and requesting remand. With leave granted on April 24, 2015, [ECF No. 2], Haut proceeds *in forma pauperis*.

**III. Standard of Review**

The Congress of the United States provides for judicial review of the Commissioner's denial of a claim for benefits. See 42 U.S.C. § 405(g)(2012). This court must determine whether or not there is substantial evidence which supports the findings of the Commissioner. See id. "Substantial evidence has been defined as 'more than a mere scintilla,'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)), but "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood,

5

487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229

(1938)). This standard also has been referred to as "less than a preponderance of evidence but

more than a scintilla," Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002), and does not permit

the reviewing court to substitute its own conclusions for that of the fact-finder. See id; Fargnoli

v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's

findings "are supported by substantial evidence" regardless of whether the court would have

differently decided the factual inquiry). Nevertheless, "[a]n ALJ must explain the weight given

to physician opinions and the degree to which a claimant's testimony is credited." Chandler v.

Comm'r of Soc. Sec., 667 F.3d 356, 362 (3d Cir. 2011). "The opinion of a treating physician is,

unless inconsistent with other evidence of record, entitled to great weight." Gamret v. Colvin,

994 F.Supp.2d 695, 700 (W.D. Pa. 2014) (citing Ahmad v. Comm'r of Soc. Sec., 531 F. App'x.

275 (3d Cir.2013).

The ALJ's decision will not be reversed if supported by substantial evidence and decided

according to correct legal standards. Id. To determine whether an ALJ's finding is supported by

substantial evidence, the district court must review the record as a whole. 5 U.S.C. § 706(1)(F).

An ALJ's selective citations that are out of context and do not fairly represent the record as a

whole results in a decision that does not adequately explain the ALJ's conclusion and

necessitates remand. Krizon v. Barnhart, 197 F.Supp.2d 279, 289 (W.D. Pa. 2002).

## IV. Five-Step Evaluation Process for Determining Disability under the SSA

Under the SSA, the term "disability" is defined as the:

> inability to engage in any substantial gainful activity by reason of
> any medically determinable physical or mental impairment which
> can be expected to result in death or has lasted or can be expected
> to last for a continuous period of not less than 12 months ...

42 U.S.C. § 423. A person is unable to engage in substantial activity when he:

6

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work....

42 U.S.C. §§ 423(d)(1)(A), (d)(2)(A).

In determining whether a claimant is disabled under the SSA, a sequential evaluation process must be applied. 20 C.F.R. § 416.920(a). See McCrea v. Commissioner of Social Security, 370 F.3d 357, 360 (3d Cir. 2004). The evaluation process proceeds as follows. At step one, the Commissioner must determine whether the claimant is engaged in substantial gainful activity for the relevant time periods; if not, the process proceeds to step two. 20 C.F.R. § 416.920(b). At step two, the Commissioner must determine whether the claimant has a severe impairment or a combination of impairments that is severe. 20 C.F.R. § 416.920(c). If the Commissioner determines that the claimant has a severe impairment, he must then determine at step three whether that impairment meets or equals the criteria of an impairment listed in 20 C.F.R., part 404, Subpart P, Appendix. 1. 20 C.F.R. § 416.920(d).

The ALJ also must determine the claimant's RFC; that is, the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 416.920(e). The ALJ is not required to uncritically accept a claimant's complaints. See Chandler, 667 F.3d at 363. The ALJ, as fact finder, has the sole responsibility to weigh a claimant's complaints about his symptoms against the record as a whole. See 20 C.F.R. §§ 404.1529(a), 416.929(a).

If the claimant does not have an impairment which meets or equals the criteria, at step four the Commissioner must determine whether the claimant's impairment or impairments

7

prevent him from performing his past relevant work. 20 C.F.R. § 416.920(f). If so, the

Commissioner then must determine, at step five, whether the claimant can perform other work

which exists in the national economy, considering his RFC, age, education and work experience.

20 C.F.R. § 416.920(g). See also McCrea, 370 F.3d at 360; Sykes v. Apfel, 228 F.3d 259, 262-

63 (3d Cir. 2000). In determining the RFC, the ALJ must consider *all of the claimant's*

*impairments and their limiting effects*, including impairments that are not severe. 20 C.F.R. §

404.1545(e). The Commissioner bears the burden of proving that his RFC or limitations are those

which do not allow for any work in the national economy. See Heckler v. Campbell, 461 U.S. 458,

460 (1983); Matthews v. Eldridge, 424 U.S. 319, 336 (1976); Sykes, 228 F.3d at 263.

## V. Discussion

Haut's challenges center on the ALJ's determination of his RFC, including his mental

RFC. ECF 13 at 4. Haut asserts that the ALJ erred in rejecting the limitations assessed by

Haut's treating psychiatrist, Dr. Brinkley. [ECF No. 13 at 4-5]. Haut argues that she failed to

properly consider the medical evidence and did not explain the weight given to Haut's treating

psychiatrist. Haut points to the ALJ's citation to the record to show that there is no clear medical

basis for the mental RFC as found by the ALJ and that the ALJ's decision is not supported by

substantial evidence, [ECF No. 13 at 10], because the ALJ's citations often are vague and consist

of lengthy string cites without indication as to what portion of that record supports the ALJ's

decision and as to what particular finding the record cite supports. Haut also points out that the

ALJ found that Haut can only have occasional contact with the public and coworkers but did not

address any restrictions regarding supervisors. [ECF No. 13 at 10]. Haut further asserts a

challenge to the failure of the ALJ in her evaluation of the opinion of Dr. Jabbour, the Agency's

own consultative examiner, regarding Haut's physical condition and the ALJ's rejection of Dr.

8

Jabbour's one hour walk/stand limitation. [ECF No. 13 at 11, n.11]. In response, the Commissioner argues that the ALJ's decision that Haut was not disabled is supported by substantial evidence and should be affirmed. [ECF No. 19 at 1].

Given that the record is approximately 1200 pages, we will briefly detail the medical evidence as it relates to Haut's challenges, to our consideration of the record as a whole, and to the failings we find with the ALJ's determination under our standard of review.

A. Medical Evidence

**1. Dr. Ben Brinkley**

Haut specifically challenges the failure of the ALJ to credit and indicate the weight given to Dr. Brinkley. [ECF No. 13 at 5, 7]. The Commissioner urges that the failure to indicate the weight given Dr. Brinkley's opinion was harmless error, citing Clutter v. Colvin, 2014 WL 4231297 (W.D. Pa. Aug. 26, 2014). [ECF No. 19 at 15]. We do not find harmless error regarding the ALJ's failure in her consideration and treatment of and reasoning regarding Dr. Brinkley's opinions, diagnoses and prognoses regarding Haut.

Dr. Brinkley was Haut's treating psychiatrist who treated him on several occasions over a period of time. R. at 729-734, 856-860. Dr. Brinkley's completed Mental Status Questionnaire dated January 11, 2012, R. at 856 (Ex. 25F), specifically indicates that he had diagnosed Haut with a) Mood Disorder, involving Haut's angry outbursts, irritability, periods of depression and anxiety; b) Generalized Anxiety Disorder, involving Haut's excessive worrying, anxiety in public, difficulty breathing, isolation, and obsessive thinking; and c) Obsessive Compulsive Disorder, involving Haut's obsessive need to organize, procrastination, and intolerance of clutter.

9

R. at 856. Dr. Brinkley further opined that Haut's prognosis was guarded due to chronic issues and poor response to treatment, and that Haut needed continued outpatient therapy. R. at 856.

To the question of whether in his "opinion, would your patient be able to engage in work activity eight hours a day, day after day, on a continued basis . . even if that work were in a 'low stress' job . . . , " Dr. Brinkley responded "No." R. at 857. Dr. Brinkley further explained the basis of his opinion as Haut having a "[h]istory of poor work performance and severe anxiety in work situations. Obsessive thinking and worrying interfere with ability to do even simple labor." R. 857. The medical questionnaire provided that the opinions in it "are made based on first-hand knowledge of the client/patient, experience treating patients with similar conditions, and are made with a reasonable degree of medical/psychological certainty." R. at 857.

The SSA defines medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). ALJ Papazekos determined that Dr. Brinkley's "no" response indicating that Haut could not work eight hours a day, day to day, constituted an opinion on the ultimate issue of disability reserved to the Commissioner under SSR 96-5, and thus rejected it out of hand. R. 22; see also 20 C.F.R. § 404.1527(d)(1). She also stated generally that Dr. Brinkley's opinion was not supported by the objective medical evidence of record or the claimant's activities, providing a lengthy string citation with little to no detail. R. 22. ALJ Papazekos did not, however, indicate that she further considered the opinion of Dr. Brinkley nor any specifics of the opinion, such as that Haut could not perform simple labor due to Haut's specific issues with obsessive thinking and worrying and

10

Haut's severe anxiety in a work situation, Dr. Brinkley's prognosis of Haut and the multiple diagnoses of Haut. In apparently rejecting Dr. Brinkley's opinion on what she perceived as the ultimate issue, she did not indicate the weight, if any, given to Dr. Brinkley's opinion either as to Haut's ability to perform work in an 8 hour day, his opinion on Haut's prognosis or his opinion as to the specifics of Haut's multiple mental conditions. Moreover, as to anger, Dr. Brinkley's treatment notes and the medical questionnaire specifically remark regarding it, but ALJ Papazekos does not discuss it. Thus, Clutter is distinguishable. 2014 WL 4231297 (harmless error where the ALJ directly addressed treating physician's opinion and findings).

ALJ Papazekos further commented that Haut had "reported improvement with medications, including staying calmer, increased functioning and less obsessive compulsive symptoms." R. 22. The records, however, actually mention Haut's dissatisfaction with his symptom control and to the contrary indicate not much improvement. R. at 702. Moreover, those records document observation of Haut as quite anxious and easily irritated, R. at 702, that he is still having OCD symptoms, R. at 768, was expecting better results, R. at 770, still had anger issues and irritability, was lashing out, and exhibited blunted affect with circumstantial thought on multiple occasions. R. at 858-860. As pointed out by Haut, several of the citations by the ALJ in finding Dr. Brinkley's opinion inconsistent with the record are to treatment records prior to the alleged onset of disability, [ECF No. 13 at 7]; R. at 485, 488, 489, 493, and 495, and others are instead supportive of Dr. Brinkley's opinion as to Haut's mental impairments, R. at 775, 776, 768, rather than contradicting it.

Although "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best," Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cri. 1993), Dr.

11

Brinkley's completed medical questionnaire also included a diagnosis with additional indication as to the symptoms experienced by Haut as part of his mental conditions and should not have been rejected outright. See Brownawell v. Commissioner of Social Security, 554 F.3d 352, 355 (3d Cir. 2008) (treating physician's opinion that claimant was prevented from working in any type of fixed schedule due to condition rendering her disabled improperly rejected). While it is true that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations, *see* 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c), treating and examining physician opinions often deserve more weight than the opinions of doctors who review records. *See, e.g.,* 20 C.F.R. § 404.1527(d)(1)-(2)." Chandler, 667 F.3d at 361. Simply put, "[a] ALJ must explain the weight given to physician opinions." Id. at 362. Here, critically, the ALJ did not do so regarding Haut's treating psychiatrist.

Our review of the ALJ's decision and the record as a whole reveals that the ALJ did not give adequate consideration to the medical records and opinion of Haut's treating psychiatrist, including not indicating the weight given, so that we may determine if her ultimate decision is based on substantial evidence. According, we find error and determine that remand is necessary.

## 2. Dr. Victor Jabbour

Dr. Jabbour, the physical Consultative Examiner, examined Haut on May 5, 2010. R. 646. Dr. Jabbour completed a Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities. R. 644. Dr. Jabbour indicated that Haut was limited to standing and walking 60 minutes in an 8 hour work day. R. 644. Dr. Jabbour also indicated at that time that Haut was not limited in his ability to sit. R. 644. Haut's March 10, 2010 function

12

report likewise indicated difficulty walking due to leg pain, R. at 358, 362, and issues with Haut's leg appear throughout the treatment records, as discussed further infra.

The ALJ nevertheless rejected Dr. Jabbour's limit on standing and walking to 60 minutes in an 8 hour work day. The ALJ gave Dr. Jabbour's opinion on Haut's abilities due to physical impairments some weight as generally consistent with the medical evidence, R. at 22, but rejected his opinion as to the stand and walk limitation as not supported by the evidence of record based on a statement by Haut that he walked 60 to 120 minutes on most days and rode an exercise bike for 40 minutes per day. It is unclear from the record, however, whether Haut's minutes of walking was during an 8 hour period, was continuous and during an 8 hour day or was further spread out throughout the entire day and at what pace. R. at 22. It also is unclear how sitting on a bike relates to the walk/stand limitation assessed by Dr. Jabbour such that it conflicts with his findings.

As the ability to perform light work classification "requires a good deal of walking or standing" 20 C.F.R. § 404.1567(b), the lack of discussion regarding Haut's impairments as to his actual ability to continuously walk or stand appears missing. The ALJ does not provide a logical bridge from the one hour restriction to the six hour ability provided for by Dr. Ali in checking the box on the form he completed. While a decision by an ALJ rejecting restriction of Haut's ability to walk/stand to 60 minutes in an 8 hour work day might be supportable on substantial evidence, given the numerous parts of the record referring to Haut's difficulties in this regard, including his right leg parethesis/meralgia paresthetica discussed infra, further consideration by the ALJ of Haut's ability to walk/stand in an 8 hour day is merited on remand.

**3. Dr. Abu Ali**

13

On the check the box form Dr. Ali indicated that Haut could stand and/or walk for "about 6 hours in an 8-hour workday." R. at 684. The ALJ gave the August 3, 2010 opinion of the State Agency medical consultant, Dr. Ali, great weight, finding it consistent with the objective medical evidence. R. 22. The ALJ reported that Dr. Ali had opined that Haut was limited to light work with the occasional posturals and concentrated exposure limitations as found by the ALJ. As indicated regarding Dr. Jabbour's opinion and Hart's walk/stand ability, not discussed by the ALJ is Dr. Ali's observation of Haut's persistent right meralgia paresthetica, discussed infra, and that staying off his legs helps his condition, R. at 689, or how that translates to Haut's ability to walk/stand in an eight hour workday.

### 4. Emmanuel Schnepp, Ph.D.

Dr. Schnepp had opined that the mental impairments were non-severe. ALJ Papazekos gave the May 18, 2010 opinion of State Agency Consultant, Dr. Schnepp, little weight because Haut subsequently had significant mental health treatment. The ALJ found that the mental health treatment records subsequent to May 18, 2010 were significant and supported a finding that Haut's mental health impairments instead are severe. R. at 22 (referring to treatment records at Stern Center, Turtle Creek and Mileston). R. at 691-703, 820-897, 1116-1158. Dr. Brinkley's treatment records likewise support these severe impairments. Indeed, we are mindful of the significant health treatment records after 2010 as observed by the ALJ and that consideration and evaluation of the evidence, regardless of source, that reflects Haut's mental condition and abilities prior to such significant mental health treatment should likewise bear this in mind.

### 5. Right Leg Paresthesia/Meralgia Paresthetica

14

Due to his obesity, Haut has thigh pain, R. 477, and paresthesia in his upper right leg with tingling and numbness, and he testified that this causes his leg to give out on him, including when going up and down steps, and causes him to walk "real slow." R. at 51. Haut also testified that he only could stand for about a half an hour due to the paresthesia. R. at 69. The medical record reflects his paresthesia/meralgia paresthetica problems with his leg, R. at 641, as well as problems with fatty tumors, some of which have been removed and some that cause additional pain in his right leg but which he has not had removed as he was told that removal would cause more problems. R. at 52.

Dr. Hennessey, who treated Haut for his leg condition, observed regarding his obesity related paresthetica that he "had significant pannus formation that has applied a 'nutcracker' effect of his right lateral femoral cutaneous nerve between his pannus and his [right anterior superior iliac spine]." R. at 643. Dr. Hennessey treated Haut's painful leg condition by performing a nerve block procedure, which reportedly did not help, and referred Haut for further treatment such as "nerve cryotherapy ablation." R. at 641. ALJ Papazekos' decision cites Haut's hearing testimony regarding the tingling and numbness in the right leg and that a doctor had observed the right leg meralgia paresthetica, but does not mention medical evidence regarding the treatment for it, other than weight loss advice, nor discuss how the condition effects Haut's work walk/stand ability in relation to Drs. Jabbour's and Ali's findings.

**6. Headaches**

Headaches are only referred to by ALJ Papazekos in summarizing a statement in a non-medical[2] third-party letter from Haut's ex-wife, R. at 21, but the headaches are not discussed by

_____

[2]A non-medical source, such as family and friends, may be considered by the ALJ "to determine the severity of a claimant's impairments and how those impairments impact the claimant's ability to work." Zirnsak v. Colvin, 777 F.3d 607, 612 (3d Cir. 2014).

ALJ Papazekos despite being discussed at the hearing before her. Indeed, Haut testified that he suffers from headaches that require him to stay in bed in a dark room four to five times a week for 45 minutes. R.70-71. Numerous places in the medical record refer to Haut's headaches and headache treatment. See e.g. R. at 1135, R. 1118, but there is little acknowledgement by ALJ Papazekos, save for the statement reporting that in the letter from Haut's ex-wife "[s]he states that claimant has chronic headaches." R. at 21. We note as well that ALJ Cusick even found headaches to be a severe impairment, and although ALJ Cusick's decision is not in any way binding on ALJ Papazekos, clearly, Haut's headaches merited at least some discussion. See Owens v. Colvin, 2015 WL 4662493, at *8 (W.D. Pa. Aug. 6, 2015) (finding error for ALJ to fail to address headaches where, though not binding, VA had found them to be disabling and thus the record was such that it reflect headaches as a medical impairment that required discussion); cf. Hughes v. Commissioner of Soc. Sec., --- F. App'x. --- 2016, 2016 WL 231676, at * 2 (Jan. 20, 2016) (ALJ incorporated by reference decision of prior ALJ).

In Trauterman v. Colvin, 1 F.Supp.3d 432, 436-37 (W.D. Pa. 2014), the district court remanded the matter because the ALJ failed to address the claimant's headache-related limitations in his RFC finding, though the claimant had testified that she had post-concussive headaches three days a week. The court observed that "[t]he ALJ's decision must allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper," 1 F.Supp.3d at 437, and if "significant probative evidence was not credited or simply ignored." Fargnoli, 247 F.3d at 42. In Trauterman, the ALJ actually addressed the claimant's headaches but nevertheless failed to account for their effect in the RFC. ALJ Papazekos did not address Haut's headaches at all and remand likewise is required.

**7. IBS**

As to Haut's IBS, ALJ Papazekos noted in his review of the medical evidence that Haut testified of loose bowel movement's condition and that his bowel problems have not remained constant over time. R. at 15. The ALJ further observed that Haut's "recent treatment is limited to occasional use of Imodium and Dipenoxylate Atropine." R. at 15 (citing Ex. 7E [R. at 378]). Yet, regarding the IBS and its symptoms as experienced by Haut, the medical record reflected IBS as a constant increasing problem, that was poorly controlled, and that with increased medication Haut would experience pain and bleeding. R. at 387, 475, 957-958, 965, 966, 978. The medical record contained a substantial treatment history regarding his IBS. Haut also testified that he has problems with abdominal pain and with his bowels and tends "to go frequently" and due to the IBD had become incontinent five days of the week. R. at 49, 51.

The record of Dr. Samir, R. at 957 (Ex. 30F), cited to by the ALJ, for example, reveals beginning with gall bladder removal that Haut experienced a constant over time battle with diarrhea and rectal bleeding as a result of the IBS and the IBS treatment consistent with Haut's testimony at hearing before ALJ Papazekos. R. at 491, 957-984. On our review, it is unclear from the ALJ's decision what evidence the ALJ may or may not have considered and rejected regarding the limiting effect of Haut's IBS, or most importantly, how that would affect his ability to work in an 8 hour day as indicated infra regarding the hypothetical. Thus, remand is required on this basis as well.

**8. Mood Disorder/Anger Symptoms/Depression**

As to Haut's mental impairments, with significant treatment occurring after May of 2010 as noted supra, the ALJ specifically rejected Haut's indication that he suffers from bipolar

17

disorder, asserting that there are no examination findings or tests to support the diagnosis and it appears that Haut offers it on his own report. R. at 16. The medical record, however, does appear to indicate "strong likelihood for personality disorder," repeated diagnosis by Haut's treating psychiatrist of personality disorder, R. at 734, 858, 859, 860, and difficulty with variable moods. R. at 734, 888, 1134. ALJ Papazekos nowhere discusses the medical records regarding personality disorder.

ALJ Papazekos recognized Haut's depression and anxiety, but she failed to address the separate diagnosis of mood disorder by Haut's treating psychiatrist, which included not only periods of depression and anxiety, but also outbursts of anger and irritability. Similar as with the issue of headaches, ALJ Cusick found Haut's mood disorder to be an impairment, although he found it not to be severe. Although ALJ Papazekos is not in any way bound by ALJ Cusick's decision and was to make a determination of disability *de novo*, it is striking to the Court that the mood disorder as experienced by Haut is not addressed in ALJ Papazekos' decision.

Notably absent from the ALJ's decision is any discussion of Haut's anger issues, relative to the mood disorder or other mental impairments. As to anger, Haut testified that he gets angry easily and is "a screamer." R. at 66. Haut's issues with anger as part of his mental impairments appear in numerous places in the record. See e.g., R. at 873, 1120, 1134, 1140, 1144. As with headaches and the mood disorder more generally, the ALJ's mention of Haut's issues with anger is virtually non-existent, limited to mention in the summaries of non-medical source letters from his two aunts that "[s]he said that the claimant has anger issues," and a recitation that Haut testified that he angers easily due to stress and anxiety. R. at 18, 21 (citing Ex. 9E & 24 F at 3). Without further discussion of Haut's anger as part of his mental conditions and how that relates

18

to his work ability, we cannot tell on review what evidence the ALJ considered and rejected, considered and discounted or considered at all. Fargnoli, 247 F.3d at 40 n.5.

Haut's depression has included severe depression at times. R. at 883, 1134, 1147, 1152. Despite the ALJ's remark that his condition has seen improvement, R. at 19, records reveal at times only "mild improvement" and at the end of treatment an increase in depression and anxiety," R. at 895, and that Haut's prognosis was only "fair." R. at 896. Moreover, where there is impairment in mental health functions, stability with medication does not necessarily mean that a claimant with mental impairments is able to work. Weinberg v. Colvin, 2013 WL 3972651, at *5 (W.D. Pa. July 31, 2013).

Regarding Haut's GAF[3] scores, we note that although the use of GAF has been eliminated in the Fifth Edition of the American Psychiatric Association's Diagnostic and Statistical Manual and can be said to have fallen into disfavor, Nixon v. Colvin, --- F.Supp.3d ---, 2016 WL 3181853, at * 3 (E.D. Pa. June 7, 2016), it is still used as medical opinion evidence by the Social Security Administration as indicated in its July 13, 2013 Administrative Message issued as a result of the change in the Fifth Edition. SSA AM-13066 (July 13, 2013). In reviewing the various GAF scores in the record, ALJ Papazekos determined that the scores themselves were inconsistent with contemporaneous mental status examination findings, and therefore, she determined that they were "so subjective as to be meaningless," R. at 19, observing as well that as to one evaluator, the GAF scores ranged from 45 to 50 during the same evaluation. R. at 19. We cannot say that the ALJ's determination regarding the GAF scores was error and we do not direct any conclusion as to the result on consideration of the GAF scores on

---

[3] GAF stands for Global Assessment of Functioning and refers to an individual's score regarding same used to report a clinician's judgment as to the individual's "overall" level of functioning in light of psychological, social and occupational limitations. Am. Psychiatric Ass'n, Diagnostic and Statistical Manual (4th ed. Text Revision 2000).

remand, as that is not our position in review. We note however that on remand, the ALJ should consider both the GAF scores and the underlying observations and opinions reported by the mental health clinicians in calculating those scores because even if the scores calculated appear useless, the back-up documentation might not be and deserves consideration in light of the decision by the SSA to continue use and consideration of the GAF as medical opinion evidence.

It appears that in reviewing the mental health records, the ALJ provided a laundry list of items included on the mental health intake checklists that may not have presented as problems at one exam or another on Haut's presentation at various mental health facilities, R. at 19, for example his cooperative and behavior, normal language skills and vocabulary, logical and coherent thought process, no thoughts of self-harm or suicidal or homicidal ideations. These observations, however, do not provide any contradiction to the negative findings in those same records regarding Haut's mental impairments, including his mood disorder, OCD, extreme anxiety, and even his depression ratings, which has been severe at times, R. at 1134, despite what the ALJ assessed as Haut's generally mild depression.

B. Haut's Activities and Social Function

ALJ Papazekos found mild restriction in activities of daily living, based on her finding that Haut is independent in personal care and further that he engages in certain activities such as maintaining his own finances and exercise, as well as organizing his room (*albeit* out of constant compulsion) and shopping. R. at 16. Regarding shopping, for example, the record showed that he would drive his Aunt to shop and would not go in to the store due to his anxiety. R. at 63.

ALJ Papazekos found Haut had only moderate difficulties in social function because he was able to live with his 3 elderly Aunts, drive, visit a friend and neighbor and attend birthday

parties and summer cookouts. R. at 16. Haut lives with his elderly Aunts, however as they are his only means of support. R. at 37. Haut testified as to a single visit of a friend in Altoona. R. at 64. The attendance at a summer cookout or birthday party caused him difficulty. The reference cited to by the ALJ actually provided that Haut disappears and is withdrawn when his relatives have summer cookouts or even a birthday party for him with Haut indicating that there are too many people. See e.g., R. at 853. Similarly, regarding attendance at the homeshow, treatment notes reflect specifically that when Haut "went to the home show, [he] felt anxious and distressed prior to going, slept the whole way three, once there felt tired and had to lay down, then slept the entire way home." R. 1016. Thus, a fair representation of these "outings" at the home show, cookouts and birthday gathering reveals them as attempts rather than successes.

The evidence regarding Haut's activities cited to by the ALJ does not reveal the extent to which such would be consistent with on task behavior as required for work. Haut testified regarding his OCD, see e.g. R. at 53-56, including how he had trouble with starting and finishing a task or project, because he gets distracted as a result of his mental condition. R. at 67. Regarding the citations to the record by the ALJ and the Commissioner as to Haut's activities and social function, it appears that much of them relate to the time prior to Haut's significant mental health treatment. See, e.g., [ECF No. 19 at 5]. Notably, the ALJ recognizes in the context of Dr. Schnepp's opinion that Haut had significant subsequent mental health treatment afterwards but does not make a similar distinction as to Haut's report of his activities and abilities, including activities of daily living, thus, rendering the ALJ's reasoning internally inconsistent. Further, as observed in Weinberg v. Colvin, 2013 WL 3972651 (W.D. Pa. July 31, 2013), the work and environment differs from the home and family environment, particularly as

it relates to a person suffering from mental disability such as an affective disorder marked by anxiety (and even anger). 2013 WL 3972651, at *5. On remand, the ALJ should consider hart's activities and social functioning as it relates to the evidence when his significant mental health history began and how that translates to his ability in a work place setting.

## C. Consideration of Record as a Whole

Regarding an ALJ's finding as to the claimant's RFC, the Third Circuit in Fargnoli explained:

> The ALJ must consider all relevant evidence when determining an individual's residual functional capacity in step four. See 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a), 404.1546; Burnett, 220 F.3d at 121. That evidence includes medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others. See 20 C.F.R. § 404.1545(a). Moreover, the ALJ's finding of residual functional capacity must "be accompanied by a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). In Cotter, we explained that [i]n our view an examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. This is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence. Id. at 705 (quoting Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir.1974)).

Fargnoli, 247 F.3d at 41. The ALJ's reasons for her findings must build "an accurate and logical bridge between the evidence and the result." Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996).

Where the ALJ fails to make mention of significant findings, the reviewing court cannot determine whether he considered and rejected them, considered and discounted them, or failed to consider them at all. Fargnoli, 247 F.3d at 40 n.5. Thus, the ALJ must give indication of the evidence he rejects and explain the reasons for discounting pertinent evidence. Fargnoli, 247 F.3d at 43.

> Although we do not expect the ALJ to make reference to every relevant treatment
> note in a case where the claimant . . . has voluminous medical records, we do
> expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in
> the record consistent with [her] responsibilities under the regulations and case
> law. [Her] failure to do so here leaves us little choice but to remand for a more
> comprehensive analysis of the evidence consistent with the requirements of
> applicable regulations and the law of this Circuit.

Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001).

As discussed herein, Haut has pointed to medical evidence that the ALJ ignored as well
as citations by the ALJ that are not borne out by our review of the record. Our review of the
medical record as a whole and the ALJ's decision describing various medical records and Haut's
testimony, reveals the ALJ's failure to consider and discuss significant evidence, such as Dr.
Brinkley's diagnoses and prognosis, evidence on Haut's anger issues as part of his Mood
Disorder, evidence regarding headaches, and evidence regarding the extent of his bowel
problems as it would relate to his need for bathroom breaks during a workday, ultimately
rendering her determination not supported by substantial evidence and requiring remand.

In much of her decision, ALJ Papazekos provides a long list of string citations without a
clear indication as to what the ALJ is attempting to support, making it difficult to determine on
review if the ALJ's specific ruling is supported by substantial evidence. Furthermore, many of
the cited to portions of the record actually substantiate the diagnoses of mood disorder and
possible personality disorder and that anger and anxiety, headaches and bowel issues were
consistently a problem sometimes with further increased expression. [ECF No. 13 at 8]; see e.g.
R. at 698, 700, 701, 858, 860, 887, 888, 1128. We reviewed the numerous string citations given
by the ALJ for broad sweeping propositions and were unable to arrive at the conclusion that her
decision was supported by substantial evidence considering the record as a whole as we must.

D. Determination that Haut's Statements concerning the Intensity, Persistence and Their Limiting Effects were not entirely Credible

ALJ Papazekos indicated that Haut's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Haut's statements concerning their intensity, persistence and limiting effects were not entirely credible. "An ALJ must explain the degree to which a claimant's testimony is credited." Chandler, 667 F.3d at 362. "Although any statements of the individual concerning his or her symptoms must be carefully considered, SSR 96-7pm (July 2, 1996), the ALJ is not required to credit them." Chandler, 667 F.3d at 363 (citing 20 C.F.R. §404.1529(a)). "In concluding that some or all of a claimant's testimony is not credible, the ALJ may rely on discrepant medical evidence and the claimant's inconsistent statements." Jones v. Astrue, 2012 WL 3279256 at * 2 (E.D. Pa. 2012). ALJ Papazekos explicitly stated that she did not find Haut fully credible, however, her citations to the record are vague, not supportive or relate to a period prior to Haut's significant mental health history. For example, she rejected Haut's indication that he would bite his hand when anxious, remarking that there was no evidence of this in the record and she did not observe bite marks. To the contrary, however, the Psychiatric Treatment Records reflect that Haut will "bite hand as a compulsion when nervous." R. at 873, 1134. On remand, the ALJ is not required to fully credit Haut's testimony but should consider the time period beginning his significant mental health history in assessing his credibility based on prior statements of ability, activities and social functioning.

E. Hypothetical/Vocational Expert Testimony

As indicated by ALJ Papazekos, if Haut had the ability to perform the full range of light work, Medical-Vocational Rule 202.21 would direct a finding that Haut is not disabled. R. at 24.

However, as Haut's ability to perform all or substantially all of the requirements for the full range of light work is impeded, testimony from the vocational expert (VE) was required to determine the extent to which Haut's limitations eroded the unskilled light occupational basis and the extent to which jobs existed in the national economy which a person of Haut's age, education, work experience and RFC could perform. R. 24. In order to rely on the VE's response, the hypothetical must include all of the claimant's impairments. Gamret v. Colvin, 994 F.Supp.2d 695, 699 (W.D. Pa. 2014). "A hypothetical question posed to a vocational expert must specify all of a claimant's impairments that are supported by the record. DeCarlo v. Barnhart, 116 F. App'x. 387, 390 (3d Cir. 2004) (citing Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir.1987). Where the hypothetical posed to the VE does not include the medically undisputed evidence of specific impairments and the impairments as found by the ALJ and supported by the record, then the VE's response does not constitute substantial evidence supporting the ALJ's determination. Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002).

In addition to light work generally requiring the ability to stand six hours of an eight hour day and requiring a good deal of walking or standing, Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001), as testified to by the VE, light work requires work that is on task 85% of the time. ALJ Papazekos questioned the Vocational Expert as to whether considering someone with Haut's age, education, work experience, who is limited to light work with occasional postural maneuvers; no climbing of ropes, scaffolds, and ladders; no hazards and no concentrated exposure to dust, fumes, pulmonary irritants, extremes in temperature (hot and cold), wetness and humidity; no use of foot pedals bilaterally, only occasional contact with the public and co-workers, and also limited to work primarily involving work with things and not people, what work that person could perform. The VE testified based on this hypothetical that the person could work as a

25

**sorter** with over 300,000 positions in the national economy, a **garment bagger** with over 50,00

positions in the national economy, or a **marker** with over 500,000 positions in the national

economy. R. at 73. The VE testified that these positions would require only decision-making

with concrete variables in standardized situations and that the essential functions of the positions

would remain basically the same day in and day out. The VE also testified that these positions

would require verbal instruction from supervisor or person in charge of training, R. at 74, but the

ALJ never discussed any limits regarding interaction with supervisors despite Haut's conditions.

The VE further testified regarding persistence that for these positions an employer would

not tolerate an employee being off task more than 15 percent and typically would only permit an

employee to take two 15 minute breaks and a 30 minute lunch break, and that certain employers

would not tolerate a required break in excess of the two regularly scheduled breaks. R. 76. 78.

The VE testified that a person would have ready access to a restroom, but that a non-scheduled

break to use same "would depend upon the frequency, how often it occurred, and how long they

spend in the bathroom." R. at 77. The VE, however, was not questioned about pace.

ALJ Papazekos' determination and the hypothetical relied on did not address any need

for a limited interaction with a work supervisor as a result of Haut's mental impairments and did

address the ready access to the bathroom but not Haut's need for bathroom breaks during an 8

hour work day. ALJ Papazekos' failure to resolve the need for bathroom breaks related to

Haut's IBS, (though it provided for locational access), Haut's level of distraction and ability to

keep on task, and Haut's ability to interact with a supervisor is problematic. It renders the

hypothetical incomplete for purposes of the ALJ's reliance and the ALJ's decision in turn not

supported by substantial evidence. A reviewing court is not simply to extrapolate backwards

26

from the hypothetical and conclude that the ALJ must have rejected the evidence as to certain impairments that would conflict with the hypothetical relied on under the guise of the substantial evidence standard, rather the ALJ is to explain her findings and reasoning as to the claimant's symptoms in the record so that the reviewing court may determine that the ultimate finding that the claimant is or is not disabled rests on substantial evidence.

There are numerous indications in the record regarding Haut's OCD that he constantly feels the need to straighten and re-straighten things, such as his car trunk and drawers for 15 minutes to an hour at a time, and the ALJ failed to indicate to what extent this would affect Haut's ability in an 8 hour work day to remain on task as well as keep pace. As pointed out by Haut, although he was found to have issues with concentration, persistence and pace as a result of his mental impairments, R. at 17, [ECF No. 13 at 11], pace was not discussed in the hypotheticals posed to the VE.

Dr. Brinkley's opinion indicated that Haut's obsessive thinking and worrying interfere with ability to do even simple labor. Importantly, the ALJ's RFC and the hypothetical posed to the VE did not resolve the extent to which Haut's conditions would render him off task. Regarding the hypothetical posed and relied on, it appears incomplete for the reasons discussed above. Accordingly, we find that the ALJ was not entitled to rely on the vocational expert's testimony in ultimately finding that Haut was not disabled. As a result, we ultimately hold that the Commissioner's final ruling that Haut was not disabled is not based on substantial evidence.

## V. Conclusion

As the finder of fact, the ALJ is required to review, properly consider and weigh all of the medical records provided concerning the claimant's claims of disability. Fargnoli, 247 F.3d at 42

27

(citing <u>Dobrowolsky v. Califano</u>, 606 F.2d 403, 406-07 (3d Cir.1979)).  In rendering her opinion, ALJ Papazekos failed to account at all for certain impairments as documented by the medical evidence and Haut's testimony.  Consistent with the foregoing, we cannot find that the ALJ complied with her duty to explain the weight given to the treating psychiatrist's opinions, diagnoses and prognosis, to consider the medical record as a whole and Haut's testimony, and to apply the proper legal standard in determining the ultimate issue of disability.

For the foregoing reasons, and based upon our review of the record as a whole, we hold that the decision of the Commissioner that Haut was not disabled is not supported by substantial evidence and, accordingly, we vacate the decision and remand for proceedings consistent with this opinion.  An appropriate order will be entered denying the Commissioner's motion for summary judgment, granting Haut's motion for summary judgment, and remanding the matter.

July _/ 9_2016

Maurice B. Cohill, Jr.
Senior United States District Court Judge